**In re SOUTHERN INDUSTRIAL BANKING CORPORATION, d/b/a Daveco, Debtor.**

**Bankruptcy No. 3–83–00372.**

United States Bankruptcy Court, E.D. Tennessee.

July 3, 1986.

---

Bernstein, Susano & Stair, J. Thomas Jones, Hunton & Williams, John A. Lucas, Knoxville, Tenn., for plaintiff.

Wagner & Myers, William C. Myers, Jr., Knoxville, Tenn., for defendants.

David L. Buuck, Knoxville, Tenn., for defendants.

## MEMORANDUM AND ORDER ON THE LIQUIDATING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF INSOLVENCY

CLIVE W. BARE, Bankruptcy Judge.

Relying upon both the statutory presumption of insolvency, 11 U.S.C.A. § 547(f) (West 1979), and affirmative affidavits, plaintiff Thomas E. DuVoisin requests summary judgment on the issue of insolvency in the consolidated preference actions wherein defendants deny the insolvency of the debtor, Southern Industrial Banking Corporation (SIBC), during the ninety-day period preceding the SIBC bankruptcy petition. Certain defendants have moved to strike the affidavits upon which DuVoisin relies. Further, defendants contend that they have proffered affidavits and other documents, which would be admissible in evidence, sufficient to rebut the statutory presumption of insolvency.

Plaintiff DuVoisin is the liquidating trustee of a trust established under the Modified Plan of Reorganization confirmed by the court in the SIBC case. In his capacity as liquidating trustee DuVoisin has filed approximately nine hundred adversary proceedings seeking to recover alleged preferential transfers. Because these proceedings involve several common issues the court consolidated, with some exceptions, the liquidating trustee's preference actions pursuant to Order No. 199, entered May 23, 1985. Further, pursuant to Order No. 215, the court required the defendants in the consolidated proceedings to file a statement admitting or denying that SIBC was insolvent during the ninety days preceding the date (March 10, 1983) of its bankruptcy petition. The majority of the defendants, including but not limited to those represented by either Wagner & Myers or David Buuck, deny that SIBC was insolvent on each of the ninety days preceding bankruptcy.

On April 22, 1985, prior to consolidation, DuVoisin moved for summary judgment in eight of the preference actions selected as "test cases." In support of his motions for summary judgment, DuVoisin filed his affidavit, dated April 19, 1985, reciting in part:

Since my appointment as Liquidating Trustee, I and my staff have conducted additional reviews and examinations of the books and records of SIBC with respect to SIBC's insolvency. Based upon such examination I have determined that SIBC was insolvent on the date the transfer was made to Defendant. Even though SIBC had prepared financial statements indicating its solvency during and prior to the time of the transfer, my investigation has shown that such representations were not correct because SIBC was in fact insolvent. Attached to my Affidavit are adjusted financial statements for SIBC as of December 31, 1981, December 31, 1982, and January 31, 1983, setting forth an accurate reflection of SIBC's financial condition. Further, at all times between these dates, and at all times prior to March 10, 1983, SIBC was also insolvent.

The adjusted financial statements attached to DuVoisin's affidavit reflect:

| DATE | SIBC INTERNAL OR PUBLISHED BALANCE SHEET | RESTATED FINANCIAL STATEMENT AS ADJUSTED BY DuVOISIN AND STAFF | ADJUSTED EQUITY |
|---|---|---|---|
| 12/31/81 | Assets: $50,329,055.42 | $36,315,451.66 | |
| | Liabilities: $47,226,990.95 | $47,763,064.53 | ($11,447,612.87) |
| 12/31/82 | Assets: $78,803,694.26 | $64,966,190.82 | |
| | Liabilities: $73,727,152.83 | $80,784,400.64 | ($15,818,209.82) |
| 1/81/83 | Assets: $82,515,123.53 | $58,756,337.85 | |
| | Liabilities: $77,424,810.83 | $81,480,810.35 | ($22,724,472.50) |

On June 19, 1985, as an exhibit to his Brief in Support of Motion for Partial Summary Judgment, DuVoisin filed a second affidavit, dated June 18, 1985, stating that he had determined that "SIBC was insolvent at all times in December 1982 and in 1983." DuVoisin's adjusted financial statements for SIBC attached to his second affidavit reflect:

| DATE | SIBC INTERNAL OR PUBLISHED BALANCE SHEET | RESTATED FINANCIAL STATEMENT AS ADJUSTED BY DuVOISIN AND STAFF | ADJUSTED EQUITY |
|---|---|---|---|
| 12/31/82 | Assets: $78,803,694.26 | $64,966,190.82 | |
| | Liabilities: $73,727,152.83 | $80,784,400.64 | ($15,818,209.82) |
| 1/31/83 | Assets: $82,515,123.53 | $58,756,337.85 | |
| | Liabilities: $77,424,810.83 | $81,480,810.35 | ($22,724,472.50) |
| 2/28/83 | Assets: $68,588,107.59 | $44,852,113.33 | |
| | Liabilities: $64,548,767.06 | $68,598,485.14 | ($23,746,371.81) |
| 3/10/83 | Assets: $56,174,948.93 | $31,456,833.09 | |
| | Liabilities: $51,788,092.29 | $55,834,527.14 | ($24,377,694.05) |

Neither affidavit recites DuVoisin's qualifications to analyze SIBC's financial condition. Also, neither affidavit includes attachments identifying the specific SIBC assets devalued by DuVoisin.

On June 20, 1985, defendants represented by Wagner & Myers moved to strike DuVoisin's affidavit. These defendants contend DuVoisin's affidavit fails to comply with Bankruptcy Rule 7056 (not made on personal knowledge; does not set forth facts that would be admissible in evidence; and does not affirmatively show that DuVoisin is competent to testify to the mat-

ters stated therein). It is further contended that the valuation of assets to determine insolvency requires expert testimony; there is no allegation that DuVoisin is an expert nor is there a statement of his qualifications; and certain adjustments were apparently made because of events occurring subsequent to the alleged preferential transfers.

In opposition to DuVoisin's affidavit, defendants represented by David Buuck filed an affidavit dated June 19, 1985, of Van Elkins, a certified public accountant. Elkins questions several categories of adjustments made by DuVoisin. He observes that DuVoisin does not aver that his revaluation of SIBC's assets was made at a fair valuation and states: "Based upon the exhibits and information attached [to DuVoisin's affidavit] and the notes on adjustments to financial statements, it is impossible to determine if SIBC was in fact insolvent on January 31, 1983."

On July 22, 1985, DuVoisin renewed his motion for summary judgment on the insolvency issue. To support his motion DuVoisin filed an affidavit he and Mark J. Miller, his assistant, had jointly executed. The joint affidavit recites the qualifications of both DuVoisin and Miller, a former employee of Irwin A. Deutscher, the trustee in the SIBC bankruptcy case. Further, attachments to the joint affidavit identify each commercial loan devalued by DuVoisin and the amount of the principal adjustment. Through their adjustments to SIBC's internal report of income alone, DuVoisin and Miller conclude that, as of November 30, 1982, instead of an internally reported net worth of $3,437,000.00 SIBC had a deficit net worth of $3,769,000.00, not including any devaluation of SIBC's commercial loan credits. According to DuVoisin and Miller a fair valuation of SIBC's commercial loan portfolio requires subtraction of the following amounts from principal indebtedness:

| 1981 | $ 4,837,662.00 |
| 1982 | 11,052,261.00 |
| Jan. 1983 | 6,902,815.00 |
| Feb. 1983 | 1,132,304.00 |
| Mar. 1–10, 1983 | 500,000.00 |
| Total Adjustments | $24,425,042.00 |

In response, defendants filed the joint affidavits of John R. Cooper and Lewis F. Cosby, III, licensed certified public accountants employed by Coopers & Lybrand; the affidavit of James E. Steiner, former president of SIBC; and a second affidavit of Van Elkins.

Cooper and Cosby, both experienced in auditing financial institutions, aver that DuVoisin's method of evaluating the SIBC commercial loan portfolio does not conform with generally accepted auditing standards; certain adjustments to the reporting of income are irrelevant to the valuation of assets during the preference period; and that in their opinion neither DuVoisin nor Miller produced documents sufficient to support the adjustments to the value of SIBC's assets.

The affidavit of James E. Steiner, president of SIBC from September 1979 until March 1983, provides in part:

[B]ased upon my personal knowledge of the financial condition of SIBC and the commercial loan portfolio of SIBC in particular, the commercial loans of SIBC identified by Mr. DuVoisin and Mr. Miller in their Affidavits were not worthless, in whole or in part, as of the time they were made and, in fact, had substantial value as of March 10, 1983, and at all times during the 90 days preceding March 10, 1983. These commercial loans were either secured by adequate collateral or, where not fully secured, were secured by guarantees of or made to persons or entities controlled by persons who had, at all times during this period, strong personal financial statements upon which not only SIBC but many other lending institutions relied in making loans to such persons or entities. I have reviewed the loans listed on *Exhibit* to Mr. DuVoisin's Affidavit which he states should be written off in full. To the best of my knowledge and belief, many of those loans have in fact been paid, in part or whole, prior to March 10, 1983. In addition, I believe the loan list to be inaccurate in several respects, including the listing of at least one [$947,429.16] loan to C & C Bank of Knox County

which was never actually made and the fact that, to my personal knowledge, one borrower offered to pay off his loan in full and tendered partial payment to the Trustee and his offer was refused.[1]

In his second affidavit Elkins states that he randomly selected the files of seven SIBC debtors whose debts were entirely or partially written off. Questioning the adjustment in each file he reviewed, Elkins offers his opinion that no effort was made to evaluate the loans as of March 10, 1983. According to Elkins, although DuVoisin has written off $60,067.63, the full amount of a demand note dated November 19, 1980, on the Bill Deatherage account as of December 31, 1981, the file contains a receipt sheet showing payments of $25,963.89 and $201.60 were received from Deatherage. Further, Elkins avers that SIBC's corporate tax returns for 1982 and 1983 report a net worth of $5,057,421.00 and $4,658,642.00 respectively. Schedule M–1 of the 1982 return reports net earnings of $262,893.00 for the year ending December 31, 1982.

Defendants also rely upon the deposition of Lewis F. Cosby, III, who questions DuVoisin's write off as of January 31, 1983, of a $1,775,000.00 loan to C & C Plaza Ltd. According to Cosby: "I didn't see anything in the file that would support writing that loan off at that point." [2]

On March 4, 1986, following re-referral to this court of the consolidated preference actions, DuVoisin filed a supplemental motion for summary judgment on the issue of insolvency.[3] Because no affiant has averred that SIBC was solvent, DuVoisin asserts that defendants have not rebutted the statutory presumption of insolvency. Citing *Lancaster v. City and County Bank (In re Tuggle Pontiac-Buick-GMC, Inc.)*, 31 B.R. 49 (Bankr.E.D.Tenn.1983),

DuVoisin maintains that defendants cannot rely upon the SIBC internal balance sheets to rebut the presumption of insolvency. DuVoisin further asserts defendants have not refuted his affidavits averring the insolvency of SIBC and that SIBC's internal balance sheets were false and inaccurate.

On March 27, 1986, defendants represented by Wagner & Myers filed their brief opposing DuVoisin's supplemental motion for partial summary judgment. These defendants point out a material difference between the devaluation of the commercial loans as of December 31, 1981, in DuVoisin's first (April 19, 1985) affidavit and the joint affidavit of DuVoisin and Miller. The first affidavit reflects a $9,806,257.45 reduction but the attachments to the joint affidavit reflect a much smaller reduction, $4,837,662.46. At his deposition DuVoisin was not able to explain the $5,000,000.00 difference.[4] According to Miller, the difference is attributable to postpetition collections and the discovery of the sale to C.H. Butcher, Jr. of loans totaling $5,500,000.00.[5]

Additionally, the defendants represented by Wagner & Myers have proffered certain documents submitted postpetition by SIBC's trustee in bankruptcy, Irwin A. Deutscher, to the Tennessee Department of Financial Institutions in conjunction with renewal applications to operate SIBC as an industrial loan and thrift company. These documents include certificates, dated June 30, 1983, reciting that the net worth of each office or place of business "does now and will exceed the $25,000.00 minimum requirement of paid in capital or capital funds required by T.C.A., Section 45–2004 as of July 1, 1983." Also, in response to the State's specific request for a current financial statement, Deutscher forwarded a SIBC balance sheet, dated May 31, 1983,

---

1. Mr. Steiner, indicted for fraud in connection with SIBC subsequent to giving his affidavit, recently asserted his constitutional privilege against self-incrimination in response to all questions at a May 7, 1986, deposition.

2. Discovery Deposition of Lewis Franklin Cosby, III at 85 (Sept. 23, 1985).

3. On September 23, 1985, the district court withdrew the reference to this court of the consolidated preference actions. See 28 U.S.C.A. § 157(d) (West Supp.1986).

4. See Discovery Deposition of Thomas E. DuVoisin at 56–57 (Aug. 14, 1985).

5. See Discovery Deposition of Mark Miller at 105–106 (Aug. 13 and 14, 1985).

prepared from the unaudited books and records of SIBC, reflecting a $4,982,299.01 net worth.

Also, on March 27, 1986, defendants represented by David Buuck filed the affidavit of Stanley C. Roy, a certified public accountant. Roy avers that the 1983 federal tax return, prepared by Peat, Marwick, Mitchell & Co., for "Southern Industrial Banking Corporation 'A Debtor in Chapter 11 Proceedings' Thomas E. DuVoisin, Trustee," reports assets exceeding liabilities in the amount of $4,658,642.00 as of December 31, 1983. It is Roy's opinion that the 1982 and 1983 SIBC tax returns reflect that SIBC held assets exceeding liabilities for the period January 1, 1982, through December 31, 1983.

Citing Tenn.Code Ann. § 62–1–102 (1982), defendants represented by Buuck also moved to strike the joint affidavit of DuVoisin and Miller since neither is a certified or licensed public accountant. It is contended that the public policy of the State of Tennessee disqualifies both DuVoisin and Miller from attesting to the solvency or insolvency of SIBC. It is not necessary for the court to reach that issue.

■ Bankruptcy Rule 7056 adopts Fed. R.Civ.P. 56 providing for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Though DuVoisin is entitled to a presumption of insolvency, § 547(f), the presumption is not sufficient to sustain a motion for summary judgment where genuine issues of material fact exist. Further, the nature of the documents suggesting solvency in these proceedings (certifications by the SIBC trustee to the State of Tennessee and federal tax returns) distinguish this action from *Tuggle*, which involved an unverified operating report proven inaccurate at trial.

When ruling on a motion for summary judgment:

[T]he court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.

*Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted).

■ Applying this standard, yet assuming arguendo that DuVoisin's affidavits should not be stricken, patently, genuine issues of material fact preclude summary judgment on the insolvency issue. The value of the SIBC assets at a fair valuation, a quintessential element in the equation to determine insolvency or solvency, is genuinely disputed.

Accordingly, in the adversary proceedings identified in Exhibit A wherein insolvency is disputed, DuVoisin's motions for summary judgment on the insolvency issue are DENIED.

SO ORDERED.

### EXHIBIT A

3–84–0180 through 3–84–0188, inclusive
3–84–0322
3–84–0342 through 3–84–0346, inclusive
3–84–0355 through 3–84–0365, inclusive
3–85–0709 through 3–85–0711, inclusive
3–85–0011 through 3–85–0035, inclusive
3–85–0039 through 3–85–0138, inclusive
3–85–0142 through 3–85–0277, inclusive
3–85–0286 through 3–85–0396, inclusive
3–85–0402 through 3–85–0602, inclusive
3–85–0605 through 3–85–0707, inclusive
3–85–0724 through 3–85–0838, inclusive
3–85–0844 through 3–85–0903, inclusive
3–85–0909 through 3–85–0921, inclusive
3–85–0923 through 3–85–0929, inclusive
3–85–0935 through 3–85–0941, inclusive
3–85–0956
3–85–0960